UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------X
OUTHOUSE PR, LLC,

    Plaintiff,

**MEMORANDUM AND ORDER**

  - against -

19 Civ. 5979 (NRB)

NORTHSTAR TRAVEL MEDIA, LLC,

    Defendant.

--------------------------------X
**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

   Plaintiff Outhouse PR, LLC ("Outhouse" or "plaintiff") brings this action against Northstar Travel Media, LLC ("Northstar" or "defendant"), alleging that defendant used plaintiff's federally registered trademark "WOMEN YOU SHOULD KNOW" without permission in news articles published by a media outlet operated by defendant. Plaintiff seeks to assert claims under Sections 32(1) and 43(a)(1)(A) of the Lanham Act. Plaintiff also seeks to assert common law trademark infringement and unfair competition claims under New York law. Pending before the Court is defendant's motion to dismiss the amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, defendant's motion is granted.

## I.   <u>Background</u>

A.   **Trademark at Issue: "WOMEN YOU SHOULD KNOW"**

Plaintiff Outhouse is a digital media company that runs a website with the domain name [womenyoushouldknow.net](womenyoushouldknow.net), on which it posts editorial content, such as interviews and profiles of women with various backgrounds.  Am. Compl. (ECF No. 18) ¶ 8.  Plaintiff also posts on various social networking platforms, including Facebook, Twitter and Instagram, links to the content on its website.  <u>Id.</u> at ¶ 9.  Plaintiff owns a federally-registered word mark "WOMEN YOU SHOULD KNOW" (the "Mark") for two different classes of use: (1) online social networking services (Class 45), and (2) entertainment services, including provision of continuing segments featuring news and commentary delivered by the internet (Class 41).[1]  <u>Id.</u> at ¶¶  17, 23.  Plaintiff publicly presents the Mark in the following forms:



(Mark as Displayed on Plaintiff's Website)

---

[1]     United States Patent and Trademark Office divides trademark uses into 45 different "classes" of products or services.  Class 41 includes education, providing of training, entertainment, sporting, and cultural activities.  <u>See</u> Trademark Manual of Examining Procedure § 1401.02(a).



(Mark as Displayed on Plaintiff's Social Network Service Pages)[2]

B.   **Alleged Infringements**

Defendant owns and is the publisher of The Business Travel News ("BTN"), which features content related to the travel industry.  Id. at ¶ 30.  On October 23, 2016, BTN published an article entitled "2016 WOMEN YOU SHOULD KNOW" on its website with the domain name www.businesstravelnews.com.  Id. at ¶ 32.  The article, which featured the photos and biographical information of some women participating in the travel industry, contained the following banner:



(BTN's 2016 WOMEN YOU SHOULD KNOW Article Banner)

---

[2]    The Court takes judicial notice of the Mark as presented by plaintiff on its website and social networking platform pages that are referred to in paragraphs 8 and 9 of the Amended Complaint.  See Fernandez v. Zoni Language Ctr., Inc., No. 15 Civ. 6066 (PKC), 2016 WL 2903274, at *3 (S.D.N.Y. May 18, 2016) ("Courts may also take judicial notice of information contained on websites where the authenticity of the site has not been questioned.").

<u>Id.</u>; <u>id.</u>, Ex. H; <u>see also</u> Sar Decl. (ECF No. 24), Ex. 1.[3]  On May
19, 2017, BTN published an article entitled "2017 WOMEN YOU SHOULD
KNOW" on its website.  <u>Id.</u> at ¶ 34.  This article, which featured
a different set of women participating in the travel industry,
contained the following banner:



(BTN's 2017 WOMEN YOU SHOULD KNOW Article Banner)

<u>Id.</u>; <u>id.</u>, Ex. H.  On June 29, 2017, plaintiff sent a cease-and-
desist letter to defendant, alleging that defendant's "WOMEN YOU
SHOULD KNOW" articles infringed the Mark and asking defendant to
refrain from using the phrase "WOMEN YOU SHOULD KNOW."  <u>Id.</u> at
¶ 36; <u>id.</u>, Ex. I.  According to plaintiff, defendant did not
respond to this letter.  <u>Id.</u> at ¶ 38.

On May 25, 2018, BTN published an article entitled "2018 WOMEN
YOU SHOULD KNOW" on its website.  <u>Id.</u> at ¶ 39.  This article, which
again featured a different set of women participating in the travel
industry, contained the following banner:

---

[3]     The copy of BTN's <u>2016 WOMEN YOU SHOULD KNOW</u> article attached to
the Amended Complaint does not properly show the banner.  <u>See</u> Am. Compl., Ex.
H.  Accordingly, we refer to the copy of the article that has been submitted by
defendant.



(BTN's 2018 WOMEN YOU SHOULD KNOW Article Banner)

_Id._; _id._, Ex. H.  Thereafter, defendant posted this banner on the BTN's Facebook page with a link to this article.  _Id._ at ¶¶ 43, 45, 47; _id._, Ex. J.  Plaintiff alleges that defendant also posted this banner on the BTN's Twitter page.  _Id._ at ¶¶ 44, 46, 48.

Plaintiff sent another cease-and-desist letter to defendant on April 4, 2019.  _Id._ at ¶ 49.  In this letter, plaintiff alleged that defendant had been infringing the Mark because the URL[4] of BTN's "2018 WOMEN YOU SHOULD KNOW" article—www.businesstravelnews .com/Women-You-Should-Know/2018—contained the Mark.  _Id._, Ex. K. In the letter, plaintiff asked defendant to stop using the phrase "WOMEN YOU SHOULD KNOW" in any manner and to substantially change the URL of 2018 article.  _Id._  Despite this letter, defendant maintained its use of the Mark.  _Id._ at ¶ 52.

On April 19, 2019, plaintiff sent defendant another cease-and-desist letter, stating that it would file the draft complaint, which was attached thereto, unless defendant complied with plaintiff's demands in its letter of April 4, 2019.  _Id._ at ¶¶ 53, 54; _id._, Ex. L.  In a letter response dated April 29, 2019,

---

[4]     "URL" denotes Uniform Resource Locator, which refers to the web address of a webpage.

defendant maintained that plaintiff did not have any viable claim. Id. at ¶ 58; id., Ex. L.  Plaintiff sent defendant another letter on May 7, 2019, disputing defendant's position.  Id. at ¶ 61.  On May 15, 2019, defendant sent a letter response, reiterating its position that plaintiff did not have any viable claim and suggesting that, if plaintiff chooses to bring a lawsuit, it would seek to recover the attorneys' fees and costs to be incurred in defending against the lawsuit.  Id. at ¶ 63.

On May 20, 2019, BTN published an article entitled "2019 WOMEN YOU SHOULD KNOW" on its website.  Id. at ¶ 64.  This article, which again featured a different set of women participating in the travel industry, contained the following banner:



(BTN's 2019 WOMEN YOU SHOULD KNOW Article Banner)

Id.; id., Ex. G.  Additionally, adjacent to the article, defendant created "Check Out Other Years" tab with a list of buttons that would redirect the readers to BTN's "WOMEN YOU SHOULD KNOW" article for a particular year by clicking the button denoting that year. Id. at ¶ 66; id., Ex. H.  Defendant also posted on the BTN's Facebook page the images of women featured in its "2019 WOMEN YOU SHOULD KNOW" article in juxtaposition with the banner.  Id. ¶¶ 67-71; id., Ex. J.

C.    **Procedural History**

Plaintiff commenced this action by filing a complaint on June 26, 2019.  See ECF No. 1.  On September 5, 2019, defendant submitted a pre-motion letter, proposing a motion to dismiss the complaint. See ECF No. 14.  On September 18, 2019, the Court issued an order, allowing defendant to make the proposed motion unless plaintiff amended its complaint within two weeks.  See ECF No. 17.  Plaintiff filed an amended complaint (the "Amended Complaint") on October 1, 2019.  See ECF No. 18.  Defendant submitted another pre-motion letter, proposing to move to dismiss the Amended Complaint.  See ECF No. 19.  After reviewing the parties' pre-motion letters, the Court granted defendant leave to make the proposed motion, which defendant filed on November 7, 2019.  See ECF Nos. 21, 22.

## II.   Discussion

A.    **Legal Standard**

1.    Federal Rule of Civil Procedure 12(b)(6)

On a motion to dismiss under Rule 12(b)(6), the Court must accept as true all factual allegations in the complaint and draw all reasonable inferences in plaintiff's favor.  City of Providence v. BATS Glob. Mkts., Inc., 878 F.3d 36, 48 (2d Cir. 2017).  However, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009), and "[t]hreadbare recitals of the elements of a

cause of action, supported by mere conclusory statements, do not suffice." Brown v. Daikin Am., Inc., 756 F.3d 219, 225 (2d Cir. 2014). "Factual allegations must be enough to raise a right of relief above the speculative level, on the assumption that all of the allegations in the complaint are true." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Thus, plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Id. If plaintiff "ha[s] not nudged [its] claims across the line from conceivable to plausible, [its] complaint must be dismissed." Id.

2.   Likelihood of Confusion

Plaintiff seeks to assert trademark infringement claims under Sections 32(1) and 43(a)(1)(A) of the Lanham Act, codified at 15 U.S.C. § 1114(1)(a) and § 1125(a)(1)(A), respectively. In addition, plaintiff seeks to assert common law trademark infringement and unfair competition claims under New York law. A common element to all claims asserted by plaintiff is likelihood of confusion. See Pristine Indus. Inc. v. Hallmark Cards, Inc., 753 F. Supp. 140, 144 (S.D.N.Y. 1990). In this Circuit, the likelihood of confusion in a trademark case is evaluated under the eight-factor balancing test announced in Polaroid Corp. v. Polarad Elec. Corp., 287 F.2d 492 (2d Cir. 1961). The eight factors are:

> (1) strength of the trademark; (2) similarity of the marks; (3) proximity of the products and their competitiveness with one another; (4) evidence that

the senior user may "bridge the gap" by developing a product for sale in the market of the alleged infringer's product; (5) evidence of actual consumer confusion; (6) evidence that the imitative mark was adopted in bad faith; (7) respective quality of the products; and (8) sophistication of consumers in the relevant market.

Star Indus., Inc. v. Bacardi & Co. Ltd., 412 F.3d 373, 384 (2d Cir. 2005).

### 3.  Fair Use Defense

Under the Lanham Act, a defendant can assert an affirmative defense of fair use by showing that defendant used the trademark at issue "(1) other than as a mark, (2) in a descriptive sense, and (3) in good faith."  JA Apparel Corp. v. Abboud, 568 F.3d 390, 400 (2d Cir. 2009).  "Because fair use is an affirmative defense, it often requires consideration of facts outside of the complaint and thus is inappropriate to resolve on a motion to dismiss."  Kelly-Brown v. Winfrey, 717 F.3d 295, 308 (2d Cir. 2013).  However, "[a]ffirmative defenses may be adjudicated [at a motion to dismiss stage] . . . where the facts necessary to establish the defense are evident on the face of the complaint."  Id.  On a motion to dismiss, the plaintiff is entitled to all reasonable inferences from the facts alleged that defeat any affirmative defense asserted by the defendant.  McKenna v. Wright, 386 F.3d 432, 436 (2d Cir. 2004).

9

B.   **Analysis**

    1.   Pleading of Likelihood of Confusion

Defendant first argues that the Amended Complaint should be dismissed in its entirety because plaintiff has failed to adequately plead likelihood of confusion by consumers, which is an element common to all of plaintiff's alleged claims, whether under the Lanham Act or under New York law.  As discussed above, the likelihood of confusion is evaluated by balancing of eight factors.  As a general rule, "the likelihood of confusion is a fact-intensive analysis that ordinarily does not lend itself to a motion to dismiss." Merck & Co., Inc. v. Mediplan Health Consulting, Inc., 425 F. Supp. 2d 402, 412 (S.D.N.Y. 2006).  "Due to the nature of the standard, a motion to dismiss will be granted for failure to plead likelihood of confusion only if no reasonable factfinder could find a likelihood of confusion on any set of facts that plaintiff could provide." Scotch & Soda B.V. v. Scotch and Iron LLC, No. 17 Civ. 4561 (ALC), 2018 WL 2224997, at *3 (S.D.N.Y. May 15, 2018).  "It is well settled that, when applying the Polaroid factors to determine likelihood of confusion at a motion to dismiss stage, courts have not required all factors to be addressed in order to find adequate pleading of a likelihood of confusion," World Trade Ctr. Ass'n, Inc. v. Port Authority of New York & New Jersey, No. 15 Civ. 7411 (LTS), 2016 WL 8292208, at *2 (S.D.N.Y. Dec. 15, 2016).

Despite this extremely lenient pleading standard, we are skeptical about whether plaintiff has adequately pled likelihood of confusion. However, further analysis is not necessary as we find that the Amended Complaint should be dismissed on the alternative ground of fair use.

### 2.   Fair Use Defense

Defendant argues that plaintiff's claims under the Lanham Act should be dismissed even if plaintiff has adequately pled likelihood of confusion because the alleged uses of the Mark by defendant[5] are protected as fair uses under the Lanham Act. As discussed above, a defendant can assert an affirmative defense of fair use against trademark infringement claims under the Lanham Act by showing that the use at issue was made "(1) other than as a mark, (2) in a descriptive sense, and (3) in good faith." JA Apparel Corp., 568 F.3d at 400. We address each element in turn.

### a) **Use Other Than as a Mark**

This element asks whether defendant used[6] the Mark "as a symbol to attract public attention." JA Apparel Corp., 568 F.3d 390, 400 (2d Cir. 2009). "A trademark use occurs when a mark indicates the source or origin of consumer products." Dessert

---

[5]     In repeatedly referring to defendant's use of the Mark as a defined term, we do not intend to suggest that defendant used the plaintiff's trademark. Rather, we refer to the Mark simply as a shorthand for the phrase "Women You Should Know."

[6]     By stating that defendant used the Mark as a defined term, we do not intend to suggest that defendant is using the plaintiff's trademark as a matter of law. Rather, we refer to the Mark as a shorthand for the phrase "Women You Should Know."

_Beauty, Inc. v. Fox_, 568 F. Supp. 2d 416, 424 (S.D.N.Y. 2008) (Chin J.), _aff'd_, 329 F. App'x 333, 334 (2d Cir. 2009).

We conclude that defendant did not use the Mark as a trademark in its articles.  Defendant's articles at issue were published on the BTN's website, which displayed a sizable and conspicuous "BTN" masthead at the top to identify the source of articles presented on it:

 

_See, e.g._, Am. Compl. Ex. H; Sar Decl., Ex. 1.  Defendant's clear identification of the articles' source by prominently displaying the BTN masthead at the top of the articles at issue evidences that defendant did not use the Mark as a trademark.  _Cosmetically Sealed Indus., Inc. v. Chesebrough-Pond's USA Co._, 125 F.3d 28, 30 (2d Cir. 1997) ("The non-trademark use of the challenged phrase . . . [is] . . . evidenced by the fact that the source of the defendants' product is clearly identified by the prominent display of the defendants' own trademarks.").  The same conclusion holds as to defendant's posts on social network service platforms because

those posts were also published on pages that unambiguously
identified BTN as the source:



See, e.g., Id., Ex. J at 1-2 (BTN Facebook Page Posts).  Moreover,
the ways by which defendant presented the Mark further undermine
an inference that defendant intended to indicate the source of the
articles at issue by including the phrase "Women You Should Know."
The Mark in the banner for "2016 Women You Should Know" article
was dominated by another phrase "MAKING CONNECTIONS" and was
presented in a size smaller than the BTN's masthead.  Sar Decl.,
Ex. 1.  In particular, the text in the banner for "2019 Women You
Should Know" article states "BUSINESS TRAVEL NEWS' 2019 WOMEN YOU
SHOULD KNOW."  Am. Compl., Ex. G.  Although the phrase "BUSINESS
TRAVEL NEWS'" is presented in a smaller font than the Mark,
inclusion of that phrase in the banner suggests that defendant
intended the audience to identify BTN as the source of the article.

The Seventh Circuit's decision in Packman v. Chicago Tribune
Co., 267 F.3d 628, 639-40 (7th Cir. 2001), is instructive.  In
that case, at issue was "The joy of six" headline on the front
page of Chicago Tribune's June 15, 1998 issue, which was published

the day after Chicago Bulls had won the sixth NBA championship. Id. at 634.  In rejecting the plaintiff's argument that Chicago Tribune used the phrase "The joy of six" as a trademark, the Seventh Circuit opined that "[t]he Tribune's use of its well-known masthead also identifies the phrase as a newspaper headline reporting on an event, and not as a Tribute trademark."  Id. at 640.  Although Packman is not binding on this Court, the Second Circuit has not expressed any disapproval of the Seventh Circuit's reasoning in Packman nor is there any contrary authority. Applying the Seventh Circuit's reasoning in Packman, which we find persuasive, supports our conclusion that defendant did not use the Mark as a trademark.

Plaintiff argues that the Second Circuit's decision in Kelly-Brown v. Winfrey, 717 F.3d 295 (2d Cir. 2013), warrants a different conclusion.  In Kelly-Brown, the plaintiff alleged that the defendants—Oprah Winfrey and various entities involved in allegedly infringing activities—used the plaintiff's word mark "Own Your Power" in at least 22 occasions, including printing the phrase on the cover of a magazine published by one's of the defendants, hosting an "Own Your Power" event, promoting the event through social media, and operating "Own Your Power" section providing motivational articles on a website operated by one of the defendants.  Id. at 308.  Based on these alleged uses of the word mark at issue, the Second Circuit concluded that the plaintiff

"has plausibly alleged that Oprah was attempting to build a new segment of her media empire around the theme or catchphrase 'Own Your Power.'" Id.  In reaching this conclusion, the Second Circuit particularly noted that "[t]he slogan or title becomes a symbolic identifier of a product or product line through repetition" and that "[i]t is adequately alleged in the complaint that the defendants were trying to create, through repetition across various forms of media, a similar association between Oprah and the phrase 'Own Your Power.'"  Id. at 310.  Despite that the alleged use of the Mark by defendant occurred one time per year for four years, we find Kelly-Brown distinguishable.  The alleged uses of the Mark by defendant here do not even remotely approach the level of "wide-ranging and varied" use of the trademark at issue by the defendants in Kelly-Brown.  Id. at 309.  Moreover, given the manner defendant used the Mark—namely, in the headline of articles under a prominent display of the masthead containing its own mark—the alleged uses of the Mark by defendant falls far short of establishing an effort by defendant to create an association between the Mark and defendant that would serve as a symbolic identifier of any article that contains the phrase "WOMEN YOU SHOULD KNOW."  Cf. Id. at 310.[7]

---

[7]      Plaintiff cites In re Scholastic, Inc., 23 U.S.P.Q.2d 1774, 1992 WL 215313 (T.T.A.B. 1992), in support of its argument that defendant's repeated use of the Mark warrants a finding that defendant used it as a trademark. However, plaintiff's reliance on that decision is misplaced.  In that case, the Trademark Trial and Appeal Board concluded that the phrase "THE MAGIC SCHOOL

b) **Descriptive Use**

"A use of a mark is descriptive if the words were used to describe the ingredients, quality or composition of a product, not the source of the product."  <u>Dessert Beauty</u>, 568 F. Supp. 2d at 425.  The facts alleged in the Amended Complaint clearly establish that defendant used the Mark in the BTN articles at issue in a descriptive sense.  Each of the articles at issue introduces pictures and biographic information of notable women in the travel industry: i.e. Women BTN Audience Should Know.

Plaintiff argues that defendant's use of the Mark could not be descriptive because no reader of defendant's articles is under an obligation to know the women presented therein.  This argument is misplaced given various meanings that the word "should" can carry.  Dictionary definitions of the word "should" indicate that it can be used not only "to express that it is necessary, desirable, or important to perform the action of the following verb" but also "to say . . . what is the correct or best thing to do."  <u>Should</u>, Cambridge Dictionary, <u>https://dictionary.cambridge.org/us/dictionary/english/should</u> (last visited May 15, 2020).  Applying the latter of these definitions, the Mark merely describes

---

BUS" could be registered as a trademark despite that the phrase constituted only a portion of the title of each book in a series.  <u>Id.</u> at *6.  The Board's reasoning with respect to the repetition in use was limited to the context of trademark registrability.  Insofar as defendant here does not dispute the registrability of the Mark, or even the plaintiff's ownership in the Mark, <u>In re Scholastic</u> is inapposite.

the subject but not the source of articles at issue: women that it would be the best for the BTN readers to know.  Therefore, we conclude that defendant used the Mark in a descriptive sense.

c) <strong>Good Faith</strong>

"With respect to the third element of the fair-use defense, the inquiry into the defendant's good faith concerns the question whether the user of a mark intended to create consumer confusion as to source or sponsorship."  <u>JA Apparel Corp. v. Abboud</u>, 568 F.3d 390, 401 (2d Cir. 2009).  Given the nature of this inquiry, the same contextual considerations that apply in considering the likelihood of confusion and assessing the similarity of two marks— namely, the overall context in which the marks appear and the totality of factors that could cause consumer confusion—also apply to a court's analysis of good faith in the context of fair use defense.  <u>EMI Catalogue Partnership v. Hill, Holliday, Connors, Cosmopulos Inc.</u>, 228 F.3d 56, 66-67 (2d Cir. 2002).

Assuming the truth of allegations in the Amended Complaint and exhibits attached thereto, we conclude that defendant used the Mark in good faith.  Of particular significance is the fact that defendant used the Mark in a descriptive sense.  As discussed above, the Mark as used by defendant literally described the subject of defendant's articles.  Further, each of defendant's articles at issue was accompanied by a conspicuous BTN masthead. "[T]he display of defendant's own name or trademark in conjunction

17

with the mark it allegedly infringes is evidence of good faith." EMI Catalogue, 228 F.3d at 66.  The physical arrangement of the BTN masthead and the Mark in those articles manifests that defendant intended to indicate BTN as the source of those articles and used the Mark only to present their subject.  Moreover, defendant used the Mark as a phrase in a font and shape that are completely dissimilar to the plaintiff's presentation of it to the public.  Defendant's activities on social network service platforms adds little because the BTN pages, on which the allegedly infringing posts were published, clearly identified BTN as the source.

Plaintiff cites defendant's repeated use of the Mark and knowledge of plaintiff's ownership of the Mark as evidence in support of an inference of bad faith.  These facts do not warrant a different conclusion.  First, given the descriptive nature of defendant's use of the Mark, repetition in use alone is insufficient to infer a bad faith.  In support of this argument, plaintiff cites Kelly-Brown, in which the Second Circuit noted the repeated use of the word mark at issue in rejecting the fair use defense.  717 F.3d at 308-09.  However, the Second Circuit considered the defendants' repeated use of the word mark at issue in inquiring into whether the defendants used it as a trademark but not as to their good faith.  Further, in contrast with the Second Circuit's conclusion that the defendants in Kelly-Brown

sought to create an association between the word mark at issue and defendants through those repeated uses, id. at 310, we have already concluded that defendant did not seek or attempt to confuse consumers as to the source of its articles through the Mark. Inferring bad faith from descriptive uses of word mark for being repeated would be inconsistent with the fundamental framework of trademark law.  See EMI Catalogue Partnership v. Hill, Holliday, Connors, Cosmopulos Inc., 228 F.3d 56, 64 (2d Cir. 2000) ("[T]he owner's rights in a mark extend only to its significance as an identifying source, not to the original descriptive meanings of a mark.").

Second, defendant's knowledge of the plaintiff's ownership of the Mark does not necessarily support a finding of bad faith. Plaintiff alleges that defendant was on constructive notice of its ownership in the Mark by the virtue of its federal registration and that defendant was put on actual notice when plaintiff sent the first cease-and-desist letter in June 2017.  Plaintiff argues that defendant's publication of articles using the Mark despite such notices support a finding of bad faith.  However, knowledge of trademark ownership alone is insufficient to support an inference of bad faith.  "Failure to perform an official trademark search . . . does not, standing alone, prove . . . bad faith," Savin Corp. v. Savin Grp., 391 F.3d 439, 460 (2d Cir. 2004).  Also, simply sending a cease-and-desist letter cannot create trademark

rights that do not otherwise exist and, therefore, cannot by itself constitute a basis for finding bad faith.  See Dessert Beauty, 568 F. Supp. 2d at 427 ("the failure to completely abandon the use after receiving a cease and desist letter is insufficient to support an allegation of bad faith as a matter of law."); see also E.R. Squibb & Sons, Inc. v. Cooper Lab., Inc., 536 F. Supp. 523, 532 (S.D.N.Y. 1982) ("In choosing a highly descriptive mark, [the plaintiff] acted at its peril; where a second comer chooses a descriptive word to name its product, more than simply knowledge of the prior use is needed to show an intent to misappropriate goodwill.").

To summarize, the facts alleged in the Amended Complaint establish that defendant used the Mark not as a trademark, but only in a descriptive sense and in good faith.  Such use of the Mark is protected as a fair use under the Lanham Act.  Therefore, plaintiff's claims under the Lanham Act in Counts I and II of the Amended Complaint are dismissed.

### 3.   State Law Claims

Plaintiff also seeks to assert common law trademark infringement and unfair competition claims under New York law. The courts in this district have held that establishing the fair use defense under the Lanham Act shields defendant from those common law claims as well.  See McGraw-Hill Cos. v. Int'l Sec. Exch., No 05 Civ. 112 (HB), 2005 WL 2100518, at *9 (S.D.N.Y. Sept.

1, 2005) (holding that a fair use constitutes a defense against a New York common law trademark claim); Wonder Labs, Inc. v. Procter & Gamble Co., 728 F. Supp. 1058, 1067 (S.D.N.Y. 1990) ("The standard for unfair competition under New York law is very similar to the standards of the Lanham Act.  Thus, the defense that the defendant's use of the mark is purely descriptive and not as a trademark equally precludes recovery for common law unfair competition.") (internal citations omitted).  Having concluded that the alleged uses of the Mark by defendant were fair uses under the Lanham Act, we dismiss plaintiff's asserted claims under New York law as well.


### III.   <u>Conclusion</u>

For the foregoing reasons, defendant's motion to dismiss the Amended Complaint is granted.  The Clerk of Court is respectfully directed to enter a judgment for defendant and close the case. This Memorandum and Order resolves ECF Docket Entry No. 22.

**SO ORDERED.**


Dated:    New York, New York
          May 15, 2020

                              _____
                              NAOMI REICE BUCHWALD
                              UNITED STATES DISTRICT JUDGE